UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CR-00800-RLW |
| | ) | |
| MARQUS PARKER, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY-PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

1.   **PARTIES:**

The parties are the defendant Marqus Parker, represented by defense counsel Patrick S. Kilgore, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri.   This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri.   The Court is neither a party to nor bound by this agreement.

2.   **GUILTY PLEA:**

A.   **The Plea:**   Pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, in exchange for Defendant's voluntary plea of guilty to Counts One, Two, and Four of the Second Superseding Indictment, the United States agrees to move for the dismissal as to Defendant of Count Five at the time of sentencing.   Moreover, the United States agrees that no further federal prosecution will be brought in this District relative to Defendant's violations of

Page **1** of **15**

federal law, known to the United States at this time, arising out of the events set forth in the Indictment.

   **B.**   **The Sentence:**   The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. **Further, based upon the unique circumstances of this case and in exchange for the dismissal of Count Five, the parties jointly recommend a sentence of 168 months.**

**3.**   **ELEMENTS:**

   **A.**   **Count One:**   As to Count One, Defendant admits to knowingly violating Title 18, United States Code, Section 2119, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

     (i)   Defendant took a 2016 Scion IA, vehicle identification number ("VIN") 3MYDLBZV1GY138392, from the presence of another;

     (ii)   Defendant did so by means of force and violence or intimidation;

     (iii)   The 2016 Scion IA had been transported in interstate commerce; and

     (iv)   At or during the time Defendant took the 2016 Scion IA he intended to cause death or serious bodily injury.

   **B.**   **Count Two:**   As to Count Two, Defendant admits to knowingly violating Title 18, United States Code, Section 924(c), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

     (i)   Defendant committed the crime of carjacking as set forth in Count One of the indictment; and

     (ii)   Defendant knowingly possessed and brandished a firearm in furtherance of that crime.

C.   **Count Four**:   As to Count Four, Defendant admits to knowingly violating Title 18, United States Code, Section 2119, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

  (i)   Defendant took a 2015 Range Rover Sport, vehicle identification number ("VIN") SALWZ2EF5FA525365, from the presence of another;

  (ii)   Defendant did so by means of force and violence or intimidation;

  (iii)   The 2015 Range Rover Sport had been transported in interstate commerce; and

  (iv)   At or during the time Defendant took the 2015 Range Rover Sport he intended to cause death or serious bodily injury.

4.   **FACTS**:

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial.   These facts may be considered as relevant conduct pursuant to Section 1B1.3:

In the afternoon of September 17, 2018, in St. Louis County, within the Eastern District of Missouri, victim H.G. returned home in her 2016 Scion IA, VIN 3MYDLBZV1GY138392. Marqus Parker, armed with a handgun, approached H.G. as she stepped out of her vehicle.   Parker displayed his handgun to her and demanded her keys.   Fearing for her life, victim H.G. gave Parker her keys and Parker fled the scene in the Scion.   The handgun that Parker possessed and brandished during the course of the carjacking is a firearm as defined by federal law. He possessed and brandished that firearm in furtherance of the carjacking in order to intimidate the victim, cause fear, and demonstrate his intent to cause death or serious bodily injury.

Less than 12 hours later, Parker and three associates drove the carjacked Scion to the area

around the Ameristar Casino in St. Charles County, within the Eastern District of Missouri. There, Parker and his associates began following a 2015 Range Rover Sport, VIN SALWZ2EF5FA525365, containing two victims: K.R., the driver, and M.N., a passenger.   Parker and his associates followed their victims for approximately five miles to victim K.R.'s home, also within St. Charles County.   As victim K.R. pulled the Range Rover into her garage shortly before 5:00 am, Parker and his associates pulled the carjacked Scion into an adjacent driveway.   Parker, accompanied by another individual, exited the Scion and approached victims K.R. and M.N. as the victims exited the Range Rover.   Parker and his co-conspirator were each armed with a firearm.   Parker and his co-conspirator each approached one of the two victims and pointed their firearms at the victims.   Parker and his co-conspirator demanded victim K.R. give them the keys to the 2015 Range Rover Sport and to a 2013 Audi Q5 parked in the driveway.   Fearing for her life, victim K.R. gave Parker and his co-conspirator her purse and the Range Rover keys.   She stated that she did not have the keys to the Audi on her.   Parker and his co-conspirator then fled the scene in the Range Rover.   Additional individuals fled the scene in the carjacked Scion.   The firearm that Parker possessed and brandished during the course of the carjacking is a firearm as defined by federal law. He possessed and brandished that firearm in furtherance of the carjacking in order to intimidate the victim, cause fear, and demonstrate his intent to cause death or serious bodily injury.

The carjacked Range Rover was recovered a few hours later.   Parker's fingerprints were found in the Range Rover, consistent with Parker being the carjacker who entered the front passenger seat when fleeing the scene.

On September 20, 2018, Parker was arrested in a hotel room in St. Louis County.   He occupied that hotel room with three other individuals.   That hotel room contained three firearms,

two of which had been stolen.   One of the firearms was found in trashcan containing the keys to the carjacked 2016 Saturn IA.   One of the other individuals in the room had in his possession the keys to a stolen Mazda that was parked outside.   Videos found on Parker's phone and on Facebook accounts associated with Parker and the other occupants of the room reveal that Parker filmed himself driving the carjacked 2016 Saturn IA, and riding in the carjacked 2015 Range Rover Sport. Video filmed by Parker's associates from within the Range Rover show Parker in the Range Rover with a firearm.   That video additionally shows the cameraman holding the keys to the carjacked Scion.   That video was filmed within an hour of the carjacking.

The 2016 Scion IA was manufactured outside the state of Missouri and therefore had been transported in interstate commerce.   The 2016 Scion IA had a value of less than $20,000.   The 2015 Range Rover Sport was manufactured outside the state of Missouri and therefore had been transported in interstate commerce.   The 2015 Range Rover Sport had a value of more than $20,000 and less than $95,000.

5.    **STATUTORY PENALTIES**:

A.    **Statutory Penalties**: Defendant fully understands that the maximum possible penalties provided by law for the crimes to which Defendant is pleading guilty are:

(i)    **Count One**:  Defendant fully understands that the maximum possible penalty provided by law for the crime to which Defendant is pleading guilty is imprisonment of not more than 15 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not more than 3 years.

(ii)    **Count Two**:  imprisonment of not less than seven years, but not more than life, consecutive to any other sentence imposed; a fine of not more than $250,000; or both such imprisonment and fine.   The Court also may impose a period of supervised release of not more than five years.   **Defendant fully understands that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of seven years consecutive to any other sentence imposed.**

(iii)    **Count Four**:  Defendant fully understands that the maximum possible penalty provided by law for the crime to which Defendant is pleading guilty is imprisonment of not more than 15 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not more than 3 years.

6.    **U.S. SENTENCING GUIDELINES: 2018 MANUAL**

Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.   The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply:

A.    **Offense Conduct**:

**COUNT ONE**
**CARJACKING**

(i)    **Chapter 2 Offense Conduct**:

(a)    **Base Offense Level**:  The parties agree that the Base Offense Level is 20, as found in Section 2B3.1(a).

(b)    **Specific Offense Characteristics**:   The parties agree that the following Specific Offense Characteristics apply: a two-level increase pursuant to Section 2B3.1(b)(5) because the offense involved a carjacking.

Page **6** of **15**

    (ii)    **Chapter 3 and 4 Adjustments**: None, except for Acceptance of Responsibility, which will be accounted for after applying the multiple-count provision of Section 3D1.1 to 3D1.4 (see below).

## COUNT TWO
## POSSESSION OF FIREARM IN FURTHERANCE OF A CRIME OF VIOLENCE

    (i)    **Chapter 2 Offense Conduct**:

    (a)    **Base Offense Level**:  The parties agree that the Base Offense Level is found in Section 2K2.4(b) and (c).

    (b)    **Specific Offense Characteristics**:  The parties agree that the following Specific Offense Characteristics apply: none known at this time.

    (ii)    **Chapter 3 and 4 Adjustments**:  If Defendant is not a Career Offender, pursuant to Section 2K2.4(b) and Application Note 5, Chapters Three and Four do not apply and, as to Count Two, Defendant will not be entitled to an acceptance of responsibility reduction under Section 3E1.1.   If Defendant is a Career Offender, pursuant to Section 2K2.4(c), Sections 3E1.1, 4B1.1, and 4B1.2 would apply and Defendant will be eligible for an adjustment for acceptance of responsibility set out below.

## COUNT FOUR
## CARJACKING

    (i)    **Chapter 2 Offense Conduct**:

    (a)    **Base Offense Level**:  The parties agree that the Base Offense Level is 20, as found in Section 2B3.1(a).

    (b)    **Specific Offense Characteristics**:  The parties agree that the following Specific Offense Characteristics apply:

- A five-level increase pursuant to 2B3.1(b)(2)(C) because a firearm was brandished;

- A two-level increase pursuant to 2B3.1(b)(5) because the offense involved a carjacking;

- A one-level increase pursuant to 2B3.1(b)(7)(B) because the value of property taken was more than $20,000 but less than $95,000.

    (ii)    **Chapter 3 and 4 Adjustments**:  None, except for Acceptance of Responsibility, which will be accounted for after applying the multiple-count provisions of Section 3D1.1 to 3D1.4 (see below).

    B.    **Estimated Adjusted Offense Levels:**    Based on these recommendations, the parties estimate that the Adjusted Offense Levels are as follows:

    (i)    **Count One**:    The parties agree that the Adjusted Offense Level for Count One is 22, unless Defendant is a Career Offender.

    (ii)    **Count Two:**    The parties agree that with respect to Count Two, Defendant's sentencing guidelines will be 84 months, unless defendant is a Career Offender.

    (iii)    **Count Four**:    The parties agree that the Adjusted Offense Level for Count One is 28, unless Defendant is a Career Offender.

Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B1.1.    If the Court finds defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI.    Defendant has discussed these possibilities with defense counsel.    Both parties reserve the right to argue that Defendant is or is not a Career Offender.

    C.    **Determining the Combined Offense Level:**    The parties agree that Count One and Count Four will not group together pursuant to Section 3D1.2.    With estimated Adjusted

Offense Levels of 22 and 28, these offenses receive 1 ½ units, for an additional one-level increase pursuant to Section 3D1.4.   The parties agree the Combined Offense Level for Counts One and Four is 29, unless Defendant is a Career Offender.

        **D.**    **Acceptance of Responsibility:**   The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility.   If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, and if Defendant is otherwise eligible, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

        The parties agree that if Defendant does not abide by all of the agreements made within this document, Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1.   The parties further agree that Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1.   In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

        **E.**    **Estimated Total Offense Level:** Based on these recommendations, the parties estimate that the Total Offense Levels are as follows:

    (i)    **Counts One and Four**:    The parties agree that the Total Offense Level for Count One and Four is 26, unless Defendant is a Career Offender.

    (ii)    **Count Two**:    The parties agree that with respect to Count Two, Defendant's sentencing guidelines will be 84 months, unless defendant is a Career Offender.

Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B1.1.  If the Court finds defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI.  Defendant has discussed these possibilities with defense counsel.  Both parties reserve the right to argue that Defendant is or is not a Career Offender.

F.    **Criminal History:**    The determination of Defendant's Criminal History Category shall be left to the Court.   Either party may challenge, before and at sentencing, the finding of the Presentence Report as to Defendant's criminal history and the applicable category.   Defendant's criminal history is known to Defendant and is substantially available in the Pretrial Services Report.

G.    **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.   The parties may not have foreseen all applicable Guidelines.   The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7.   **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

   A.   **Appeal:**   Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

   i.   **Non-Sentencing Issues:**   The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

   ii.   **Sentencing Issues:**   In the event the Court accepts the plea and sentences Defendant consistent with or below the parties' jointly recommended sentence of 168 months, then, as part of this agreement, Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History.   Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences Defendant consistent with or above the parties' jointly recommended sentence of 168 months.

   B.   **Habeas Corpus:**   Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

   C.   **Right to Records:**   Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8.    OTHER:

A.    Disclosures Required by the United States Probation Office:   Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the United States.

B.    Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:   Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against Defendant.

C.    Supervised Release:   Pursuant to any supervised release term, the Court will impose standard conditions upon Defendant and may impose special conditions related to the crime Defendant committed.   These conditions will be restrictions on Defendant to which Defendant will be required to adhere.   Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.   Defendant understands that parole has been abolished.

D.    Mandatory Special Assessment:   This offense is subject to the provisions of the Criminal Fines Improvement Act of 1987 and the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which Defendant agrees to pay at the time of sentencing.   Money paid by Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

E.    Possibility of Detention:   Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

F.   <u>Fines and Costs of Incarceration and Supervision:</u>   The Court may impose a fine, costs of incarceration, and costs of supervision.   Defendant agrees that any fine imposed by the Court will be due and payable immediately.

G.   <u>Forfeiture:</u>   Defendant agrees to forfeit all of Defendant's interest in all items seized by law-enforcement officials during the course of their investigation.   Defendant admits that all United States currency, weapons, property, and assets seized by law enforcement officials during their investigation constitute the proceeds of Defendant's illegal activity, were commingled with illegal proceeds, or were used to facilitate the illegal activity.   Defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the United States and to rebut the claims of nominees and/or alleged third party owners.   Defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

9.   <u>ACKNOWLEDGMENT AND WAIVER OF DEFENDANT'S RIGHTS:</u>

In pleading guilty, Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the United States to prove the elements of the offenses charged against Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses.   Defendant further understands that by this guilty plea, Defendant expressly waives all the rights set forth in this paragraph.

Defendant fully understands that Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of the waiver of these rights. Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the United States' evidence and discussed the United States' case and all possible defenses and defense witnesses with defense counsel.   Defense counsel has completely and satisfactorily explored all areas which Defendant has requested relative to the United States' case and any defenses.

10.   <u>VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT</u>:

This document constitutes the entire agreement between Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case.   In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea.   Defendant further acknowledges that this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

11.   <u>CONSEQUENCES OF POST-PLEA MISCONDUCT</u>:

After pleading guilty and before sentencing, if Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any

term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement.   The United States may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12.      **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the United States agrees to dismiss or not to bring.

4/16/2021
Date

Jason S. Dunkel
Assistant United States Attorney

4/19/2021
Date

Marqus Parker
Defendant

4/19/2021
Date

Patrick S. Kilgore
Attorney for Defendant